UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>    Albert J Porst, Jr.,<br><br>                                  Debtor | Chapter 13<br><br>Case No. 11-42759 |
| Albert J. Porst, Jr.,<br>                        Plaintiff,<br><br>                v.<br><br>Deutsche Bank National Trust Company in its capacity as Trustee for Argent Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-M1, Argent Mortgage Company LLC, Ablitt Scofield PC, and Citi Residential Lending, Inc.<br>                      Defendants. | Adversary Proceeding No. 11-04137 |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT and
SUPPORTING MEMORANDUM OF LAW**

    NOW comes the Plaintiff, Albert J Porst Jr. (hereinafter the "Plaintiff") and, pursuant to Rules 3007, 7056 and 9014 of the Federal Rules of Civil Procedure, and Local Rule 7056.1 and 9013-1, as well as Sections 502, 506, and 1322 of Title 11 of the United States Code, herewith moves for partial summary judgment as to Count I of his Complaint seeking a determination by the Court that the debt alleged in Claim 3-1 is wholly unsecured and that the mortgage upon which it is based is void.

I.      **Introduction and Procedural History**

The Plaintiff's mother, Frances E. Porst (hereinafter "Frances"), created a trust (hereinafter "Trust") as grantor in 1992, naming herself as trustee, see Stmt of Mat Facts in Supp of Pl.'s Mot. for Partial Summ Judg dated Jan. 24 2012 (hereinafter "Plaintiff's Statement"), ¶¶ 5-6, and then transferred real estate located at 115 Boardman Street, Haverhill, Massachusetts (hereinafter "Property") to the Trust, see id., ¶ 9. The Trust was not a simple nominee trust; rather it granted to Frances a life estate in the Property, and upon her death it transferred a life estate in the Property to the Plaintiff, and upon his death it transfers all remaining interest to certain remaindermen. See id., ¶ 8. After the creation of the Trust and transfer of the Property to the Trust, various documents were recorded at the Registry of Deeds purporting to constitute (1) the revocation of the Trust, see id. ¶ 11, and then (2) the Trust's subsequent transfer of the Property to the Plaintiff, see id., ¶ 14.

**ARGUMENT**

II.     **The Plaintiff did not hold any interest in the Property at the time he granted the mortgage, because the prior attempted transfers of the Property from the Trust to the Plaintiff were unauthorized under the terms of the Trust and otherwise without legal effect.**

Although the Trust allowed for revocation of the Trust, it could only be done by written acknowledgment of the grantor. See Pl.'s Stmt, ¶ 11; compl, Exh C. The revocation, however, did not contain such an acknowledgment. Compare Pl.'s Stmt, ¶ 11 and compl, Exh C with McOuatt v McOuatt, 320 Mass. 410 (1946)(acknowledgment is formal statement by grantor that execution of instrument was his fee act and deed); Thus, the purported revocation of the Trust on or about August 19, 2003 was not effective prior to the attempted conveyances of the Property from the Trust to the Plaintiff. See Phelps v State St. Trust Co., 330 Mass. 511, 512 (1953)("The law of Massachusetts is plain that a valid trust, once created, cannot be revoked or

2

altered except by the exercise of a reserved power to do so, which must be exercised in strict conformity to its terms."). See also Pl.'s Stmt, ¶¶ 10-13. Despite this and the fact that the Trust technically owned the Property prior to its attempted conveyance to the Plaintiff via deed, the deed signed by the Trust still transferred no interest in the Property to the Plaintiff because the Trust did not have the power to convey the Property to him under its own terms.[1]

    **A.**    **Although the Trust contains language concerning a general power of sale, the deed at issue reflects the conveyance of the Property to the Plaintiff for one dollar.**

The only transfers of the Property to the Plaintiff were by the Trust for the stated consideration of one dollar. See Pl.'s Stmt, ¶ 14. Nothing in the Trust, however, grants the trustee any power to give away trust property or apportion property among the beneficiaries. See Pl.'s Stmt, ¶ 7; compl, Exh A (Decl of Trust). The only language in the Trust concerning any power of the trustee to sell property states:

> The Trustee shall be entitled to reasonable compensation to be paid from the trust property and in addition to, and not in limitation of, her common law and statutory powers, shall have and may exercise the following powers:
>
> 1.    To sell and to grant options to purchase all or any part of the trust property, real and personal, at public or private sale, for such consideration and upon such terms, including credit, as she deems advisable . . . .

See id., Exh A (Decl of Trust, Art.VII.A)(emphasis added)

    **B.**    **The attempted transfer(s) are void under Clune v Norton, 306 Mass. 324 (1940) because they are not "sales" and they violate the trustee's duties to the other beneficiaries under the Trust.**

---

[1] The analysis in this Part A is argued based upon whether the attempted transfer occurred on August 19, 2003, see compl, Exh D, or occurred on February 25, 2004, see id., Exh E. The Plaintiff notes that the deed dated August 19, 2003 was never recorded until years after the Plaintiff's mortgage of the Property to Argent. See id, Exh D (recorded in 2010).

3

It is well established in Massachusetts, that even where a general power of sale is contained in a trust, where there is no consideration received for the transfer of trust property and the trust requires said property to be held for the benefit of remaindermen, the conveyance is void and a nullity.  See Clune v Norton, 306 Mass. 324 (1940). In Clune, two co-settlors created a trust granting to themselves a life estate in real property with the remainder to be held in trust for the benefit of certain remaindermen. It also contained a power of sale provision for the trustee that permitted the trustee in general to sell property at "private auction" or "public contract." See Clune at 326. This language concerning power to sell property is comparable to the language in the Trust in this case, which provides for the sale of trust property "at public or private sale." See compl., Exh A (Decl of Trust, p. 5).

In Clune, when one of the two co-settlors died, the trustee conveyed the real estate to the surviving settlor, who was also a beneficiary (with a life estate in the real estate) for no consideration despite the fact that the trust granted a remainder interest to other beneficiaries in a residuary clause. The Clune Court held the conveyance to the co-settlor beneficiary was null and void and had no legal effect because the conveyance was not a sale since it was without consideration and it violated the trustee's duties to the remaindermen who would be left with nothing. See Clune at 327; id. ("[W]hile the trustee was given a broad power of sale or mortgage, still the proceeds of any sale or mortgage were to be held by him 'upon the same trusts and to the same uses' set forth in the trust deed.").  Because the exact same facts exist in this case, i.e., the trustee attempted to give the Property to the Plaintiff, one of several beneficiaries, see Pl.'s Stmt, ¶ 8, the Court must hold that under Massachusetts law, these conveyances were without legal effect and not a valid exercise of the power of sale provision in the Trust.  See also Dexter v

4

Dexter, 274 Mass. 273, 276-77 (1931)(ability to sell or exchange property does not confer authority to apportion property among beneficiaries).

      **C.     The attempted transfer(s) were void because the trustee could not have deemed one dollar "reasonable compensation" under the Trust's language pertaining to general power to sell property.**

The facts of this case go beyond those in Clune to show that the attempted conveyance was void. First, the language concerning power of sale is expressly limited and circumscribed by language preceding it describing the trustee's ability to receive "reasonable compensation" for trust property. See compl., Exh A (Decl of Trust, Article VII, Par. A, p. 5 ("The Trustee shall be entitled to reasonable compensation to be paid from the trust property and  . . . shall have and may exercise the following powers: . . . [t]o sell . . . the trust property . . . at public or private sale, for such consideration as she deems advisable . . . .")))(emphasis added).  To the extent the trustee had a power to sell property for consideration she deemed advisable under the latter part of this language, that power was circumscribed and limited to proceeds which constituted "reasonable compensation" in receipt for trust property. See Banushi v Dorfman, 438 Mass. 242, 244 (2002)(doctrine of ejusdem generis requires that when general words follow specific words, the general words are construed to embrace objects of only similar nature to the objects enumerated by the specific words); Driscoll v Fiske, 21 Pick. (Mass.) 503 (1839)(applying ejusdem generis to assignment in trust); Hershman-Tcherepnin v Tcherepnin, 452 Mass 77, 84 n. 15 (2008)(same).

Because the one dollar described in the deed(s) attempting to convey the Property to the Plaintiff cannot be considered reasonable compensation in exchange for the Property, especially in light of the remaindermen's right to the residue upon the death of the Plaintiff, the Trust's conveyance was not an authorized "sale" under the Trust's terms. This limiting language is not

5

even present in Clune, and is another reason that the transfer to the Plaintiff was void. See Clune v Norton, 306 Mass. 324 (1940)

### D. The attempted transfer was void and the power of sale did not apply because the Property is the family home.

The Property was not just any "trust property" under the Trust's terms but rather was the "family home." See Pl.'s Stmt, ¶ 4. Because the language of the Trust excluded the family home from the general power of sale, this is another reason the attempted conveyance to Plaintiff from the Trust was void. See Whittenberger v. Whittenberger, 76 Mass. App. Ct. 1126 (unpublished)(intent of settlor in trust derived from four corners of the instrument), review denied, 458 Mass. 1101 (2010); Loring v Stewart, 349 Mass. 365, 369 (1965)(intent of settler determined from words in specified portion of trust to be interpreted along with all other provisions in the trust instrument and such intent must be given effect unless some positive rule of law forbids it).

In this case, the Trust expresses the settlor's intent to maintain the family home as the residence of the Plaintiff during his life unless he cannot afford it anymore. See compl, Exh A (Decl of Trust, pp. 2-3). Only at that point in time may he, after making written request, ask the trustee to sell the property and then the proceeds must be kept in trust for him until his death and then paid over to the remaindermen. See id.  This language shows that the intent was to preserve the family home for the Plaintiff's use during his lifetime and after Frances' death.  Yet the transfer from the Trust to the Plaintiff took place prior to the point in time when such a financial obligation would have fallen on his shoulders, since Frances was still alive at the time. See compl, Exh D and E (transfer(s) in 2003 or 2004 signed by Frances); compare also id., Exh A (Decl of Trust, Art I (Frances obligated to maintain real estate during her lifetime)) with id., Exh

6

A (Decl of Trust, Exh A, Art II (upon Frances' death Plaintiff obligated to maintain family home).

Because the circumstances for a sale of the family home did not exist at the time of the attempted conveyance as expressed in specific language dealing with that type of property, the general power of sale language did not authorize the transfer of the Property to the Plaintiff. See Royd-Sykes v Dicken, 142 P.3d 338 (Kan.App. 2006)(unpublished)(reversing lower court's denial of injunctive relief to beneficiary of trust seeking to enjoin sale of trust property to third party by trustee-beneficiary holding life estate despite general power of sale contained in trust where trust described settlor intention that any real estate remain in settlor's family and where trust contained residuary clause). See also, e.g., Revoc Co. v Thomas, 16 A.2d 847 (Md.App. 1940)(power of sale not applicable where sale is forbidden in specific words or trust property is to be retained in specie in the trust).   For this additional reason, the transfer was void and without legal effect. Clune v Norton, 306 Mass. 324 (1940).

In sum, the attempted prior transfers of the Property to the Plaintiff were void and he received no interest in the Property prior to his purported mortgaging of it to Deutsche Bank's predecessor in interest. As a result, the mortgage upon which Deutsche Bank claims the debt alleged in Claim 3-1 is secured, is in fact void and the debt is unsecured.

**III.    Even if the original mortgage to Argent was valid because the Trust authorized the prior transfer of the Property to Plaintiff, the assignment to Deutsche Bank was materially defective and on the date of the Bankruptcy Petition, the claim was unsecured.**

   **A.    The assignment of the mortgage to Deutsche Bank contains a material defect on its face and for that reason failed to transfer any mortgage to Deutsche Bank.**

7

The assignment of mortgage to Deutsche Bank failed to contain an acknowledgment by the signer that it was her free act and deed. See Claim 3-1 (assignment attached). As a matter of law, this defect in the assignment is fatal to any assertion that the assignment was valid in this case. See, e.g., In re Giroux, 2009 WL 1458173 (Bankr.D.Mass. May 21, 2009), aff'd, MERS v Agin, 2009 WL 3834002 (D.Mass. Nov. 17, 2009).

In Giroux, the notary's failure to identify the signer of the mortgage was a material defect that invalidated the mortgage on the Trustee's Section 544 challenge. The Court explicitly stated both (1) the identity of the signer and (2( the statement by the signer that the deed is signed voluntarily are required in the acknowledgment for the transfer of a property interest in a mortgage. The Court's decision in Giroux was affirmed in two other cases, In re Bower, 2010 WL 4023396 (Bankr.D.Mass. Oct 13, 2010) and In re Dessources, 430 B.R. 330 (Bankr.D.Mass. June 1, 2010). Both the Bower and Dessources Courts agree with Giroux, though the Court in Dessources held the defect in that case was not material because the defect constituted only the omission of the manner of notary's identification of the signer. The Dessources Court explicitly stated that the statements in statutory form of the appendix to Chapter 183 were the bare minimum requirements for an effective transfer of a real property interest, and that form includes the statement that the signature is made voluntarily. See Dessources at 335 (noting difference in mandatory requirements of statutory form as compared to non-mandatory requirements of Executive Order standards for notaries).

Because the assignment of a mortgage is the transfer of an interest in title to property, see, e.g., Culhane v Aurora Loan Services of Nebraska, 2011 WL 5925525, at * 7 (D.Mass. Nov 28, 2011)("Under the 'title theory' of mortgages, to which Massachusetts adheres, a mortgage is a transfer of legal title to a property for the purpose of securing a debt."), it is subject to the

8

statute of frauds, see Mass.Gen.Laws ch. 259, § 1; Linsky v Exchange Trust Co., 260 Mass. 15, 18 (1927)(agreement to assign mortgage is a conveyance in land that must be in writing to be enforceable citing Mass.Gen.Laws ch 259, § 1). The requirement that it must be acknowledged applies to it as well. See, e.g., M'Mechan v Griffing, 3 Picke (Mass.) 149, 152 (1825)("[N]o bargain, sale, mortgage, or other conveyances of houses or lands, made and executed within this province, shall be good and effectual in law to hold such houses or lands against any person or persons . . . . unless the deed or deeds thereof be acknowledged or recorded.").

In sum, the assignment of the mortgage contains a material defect, and for that reason did not transfer any mortgage interest to Deutsche Bank. See MERS v Agin, 2009 WL 3834002, at * 2 (D.Mass. Nov. 17, 2009 ("Because Massachusetts is a strict formality state, the Court agrees . . . that the Massachusetts courts are likely to follow In re Biggs, 377 F.3d 515 (6th Cir.2004), which held that the omission of the mortgagor's name in the acknowledgment was not a 'purposeless formality' and resulted in the avoidance of a mortgage under 11 U.S.C. § 544(a)(3).")(citing cases)

### B. Because the assignment did not transfer the mortgage to Deutsche Bank by the time of Plaintiff's Bankruptcy Petition, Claim 3-1 is unsecured.

The defect in the assignment has ramifications to the Debtor's estate. This is due to the *timing* of the Plaintiff's bankruptcy petition in light of the defective assignment in this case. The Debtor filed his petition on or about June 29, 2011 and the assignment to Deutsche Bank supposedly took place before that on January 15, 2009. See Claim 3-1 (assignment attached). Deutsche Bank's claim in Claim 3-1 is alleged to be secured solely based upon this prior receipt of the mortgage since it is not the original lender. If the assignment to it was not valid prior to the Plaintiff's petition, then the claim is unsecured as of the date of the petition. See Culhane v Aurora Loan Services of Nebraska, 2011 WL 5925525, at * 17 (D.Mass. Nov. 28, 2011)(note

9

holder may not foreclose prior to receiving assignment from mortgage holder).[2] Thus, *on the day of the Plaintiff's petition, Deutsche Bank did not hold the mortgage.*

### It is the day of the bankruptcy petition that determines whether a claim is secured or unsecured.

It is well established that Section 506(a) must be consulted first to determine whether a claim is secured or unsecured. See In re McDonald, 205 F.3d 606 (3rd Cir.), cert. denied, 531 U.S. 822 (2000). **And the point in time to determine the extent of a claim's secured status is the date of the petition.** See 11 U.S.C. § 506(a)(2); In re Wetherbee, 164 B.R. 212, 215 (Bankr.D.N.H. 1994) )("[O]nly if a claim is secured by a debtor's principal residence at the time of the bankruptcy petition is the debtor prohibited from modifying the creditor's interest under the plain language of 11 U.S.C. § 1322(b)(2)."); In re Boisvert, 156 B.R. 357 (Bank.D.Mass. 1993); In re SW Hotel Venture LLC, 2011 WL 4704215 at * 18 (Bankr.D.Mass. Oct 4, 2011); In re Pelosi 382 B.R. 582, 584 (Bankr.D.Mass. 2008)(citing In re Mann, 249 B.R. 831 (1st Cir. B.A.P. 2000)).

"An allowed claim of a creditor secured by a lien on property . . . is a secured claim to the extent of the value of such creditor's interest . . in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a)(1). "Under § 506(a)(1), a claim is bifurcated into two parts. The claim is secured to the extent of the value of the creditor's interest in the property, and unsecured

---

[2] The decision in Culhane is binding on this Court. See In re Windmill Farms, Inc., 70 B.R. 618, 621-22 (9th Cir. B.A.P. 1987)(bankruptcy judge is bound by the decision of a federal district court sitting in the same district since district courts are intermediary between Bankruptcy Court and Court of Appeals), rev'd on other grounds, 841 F.2d 1467 (9th Cir. 1988) ; In re Moisson, 51 B.R. 227, 228 (Bankr.E.D. Mich. 1985)("Clearly, bankruptcy judges are bound by the decisions of the district judges sitting in their districts."); In re Phipps, 217 B.R. 427, 430-31 (Bankr.W.D.N.Y. 1998)("That a district court decision is more than merely persuasive authority is 'meat and potatoes' here in daily practice among the judges of the Western District . . . ."). But cf. LBM Fin. LLC v Shamus Holdings, Inc., 2010 WL 4181137, at * 2 n. 2 (D.Mass. Sept. 28, 2010)(stating without analysis that decision of Bankruptcy Appellate Panel, like district court decisions, persuasive but not binding on Bankruptcy Court), aff'd 642 F.3d 263 (1st Cir. 2011).

to the extent that the amount of the claim exceeds the value of the creditor's interest in the property. Section 506(d) provides for a mechanism to avoid a lien that secures a claim that is not an allowed secured claim." In re Cook, 432 B.R. 519, 522 (Bankr. D.N.J. 2010) aff'd, 449 B.R. 664 (D.N.J. 2011). "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ." 11 U.S.C. § 506(d).

"Under § 506(d), a claim qualifies as an "allowed secured claim" if it is allowed as a claim and if the claim is secured, in the sense that the creditor holds a security interest in the collateral." In re Cook, 432 B.R. 519, 524-25 (Bankr. D.N.J. 2010)(emphasis added), aff'd, 449 B.R. 664 (D.N.J. 2011). Conversely, where a creditor does not hold any security interest in the collateral, it does not have an allowed secured claim. Id. Because Deutsche Bank held no interest in the mortgage on the date of the petition due to the material defect in the assignment of the mortgage, and therefore did not have an interest in the security for the alleged debt owed to it, it does not have an allowed secured claim, and the mortgage is therefore void under Section 506(d). See 11 U.S.C. §506(d)(if lien secures a claim that is not an allowed secured claim, it is void); In re McDonald at 611 ("Once we accept that courts must apply § 506(a), then it follows . . . that a wholly unsecured mortgage holder does not have a secured claim."); In re Cook, 432 B.R. 519, 528-29 (Bankr. D.N.J. 2010)(debtor may void wholly unsecured claim and citing cases), aff'd, 449 B.R. 664 (D.N.J. 2011).

Furthermore, because Claim 3-1 is not an allowed secured claim and is wholly unsecured, the anti-modification protection of Section 1322(b)(2) does not apply to it in this Chapter 13 case. See In re McDonald, 205 F.3d 606 (3rd Cir.), cert. denied, 531 U.S. 822 (2000)(chapter 13 debtor could modify wholly unsecured claim of junior mortgagee by treating claim as unsecured, voiding lien and paying a de minimis or zero dividend to the unsecured creditor); In re LaFata,

11

483 F.3d 13 (1st Cir. 2007)(Section 1322(b)(2) does not bar modification where mortgage loan wholly unsecured because residential property collateral built on lot that was not included in the mortgage). Because Claim 3-1 is wholly unsecured, Deutsche Bank may not even seek to invoke the protection of Section 1322(b)(2) in the first place. See In re Bartee, 212 F.3d 277, 290 (5th Cir. 2000) ("In the case of a wholly unsecured junior mortgage, the valuation function of § 506(a) obviates the need to even consult § 1322(b)(2).")("Without an allowed secured claim, a creditor cannot invoke § 1322(b)(2).").

As a result therefore of the failure to effect a valid assignment of the mortgage prior to the date of the petition, Claim 3-1 is wholly unsecured and a de minimus amount to Deutsche Bank as unsecured creditor is warranted in this case. 11 U.S.C. § 506(a) and (d); 11 U.S.C. § 1322; See, e.g., In re McDonald, 205 F.3d 606 (3rd Cir.), cert. denied, 531 U.S. 822 (2000).

**In sum, because (1) the Trust had no authority to transfer any interest in the Property to the Plaintiff prior to his mortgage to Argent, the mortgage is without any legal effect. Alternatively, (2) the assignment to Deutsche Bank had no effect because it contained a material defect and on the date of the Bankruptcy Petition the claim was unsecured.**

WHEREFORE, the Plaintiff moves for summary judgment as to Count I and for a determination that the debt alleged in Claim 3-1 is unsecured and dischargeable.

        Respectfully submitted,

        ALBERT J. PORST, JR.,
        PLAINTIFF

By:    __/s/ Sara Discepolo_____
        Sara Discepolo, Esq.
        550 Cochituate Road, Suite 25
        East Wing, Floor Four
        Framingham MA 01701
        Tel: 617-549-4537
        Email: info@discepololaw.com
        BBO # 628721
        Plaintiff's Attorney

January 24, 2012

## **RULE 9013-1 CERTIFICATION**

The undersigned certifies that she made a good faith attempt to determine the position of the Defendants on January 23, 2012 concerning this Motion and based upon responses received determined the following: (1) Deutsche Bank National Trust Company opposes the Motion; (2) Ablitt Scofield PC opposes the Motion; (3) the Plaintiff has been unable to determine the position of Citi Residential Lending, Inc.; and (4) the Plaintiff has been unable to determine the position of Argent Mortgage Company LLC.

___/s/ Sara Discepolo_____

**CERTIFICATE OF SERVICE**

      I, Sara Discepolo, hereby certify that on January 24, 2012, I served a true and accurate copy of the foregoing document with attachments, if any, on the below referenced ECF users by filing via the Court's ECF system:

Ranen Schechner, Esq.
Hinshaw & Culbertson, LLP
28 State Street, 24th Floor
Boston MA 02109

Phoebe Winder, Esq.
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston MA 02111

Todd B Gordon, Esq.
The Gordon Law Firm LLP
101 Federal Street, 17th Floor
Boston MA 02110

                                                                              /s/ Sara Discepolo
                                                                              Sara Discepolo