# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 13 |
|  | ) | Case No. 11-42759-MSH |
| ALBERT J. PORST | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |
| ALBERT J. PORST | ) |  |
|  | ) |  |
| Plaintiff | ) | Adversary Proceeding |
|  | ) | No. 11-04137 |
| v. | ) |  |
|  | ) |  |
| DEUTSCHE BANK NATIONAL TRUST | ) |  |
| COMPANY ET AL | ) |  |
|  | ) |  |
| Defendants | ) |  |

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO DISMISS

Defendants, Deutsche Bank National Trust Company, Ablitt Scofield, P.C.,

CitiResidential Lending Inc., and Argent Mortgage Company LLC have moved, pursuant to Fed.

R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012, to

dismiss each of the remaining counts of a six-count complaint of plaintiff-debtor, Albert J. Porst

("Mr. Porst" or the "debtor").[1]  Mr. Porst opposes the defendants' motions and requests that

summary judgment be entered against them on count I of his complaint.[2]

---

[1] Each defendant filed a separate motion to dismiss the combined thrust of which is to seek
dismissal of all remaining counts.

[2] Count I of the complaint does not identify against which defendants count I lies.   Nor does the
debtor identify against which of them he seeks summary judgment.   Because all of the defendants
have taken some action in reliance upon the validity of the mortgage, I will assume the debtor

## Facts

The facts below are drawn from the complaint, documents attached to the complaint and documents of public record referenced in the complaint. The facts are not in dispute.

In February 1992, Frances E. Porst, the debtor's mother, created the Frances E. Porst Trust (the "Trust"), naming herself as trustee and reserving for herself as grantor (i) a life estate in any real property conveyed to the Trust and (ii) the powers to revoke and amend the trust instrument.[3] The Trust provided that upon Ms. Porst's death the debtor, if he were alive, would receive a life estate in the family home if it were still owned by the Trust.[4] Upon the debtor's death, any principal and income in the Trust would be paid over to certain contingent remainder beneficiaries and the Trust would terminate.[5] In the event that Ms. Porst decided to amend or revoke the Trust, she could do so "by delivering to the Trustee a written instrument signed and acknowledged by [her]."[6] Eight months after the creation of the Trust, Ms. Porst conveyed to the Trust the family home at 115 Boardman Street in Haverhill, Massachusetts.[7]

On August 19, 2003, more than ten years after the creation of the Trust, Ms. Porst executed a document purporting to revoke the Trust. The revocation document bears the signatures of two

---

targets all of the defendants in count I.

[3] Complaint, p. 3, ¶¶ 11, 12

[4] Complaint, p. 3, ¶ 12

[5] Complaint, p. 3, ¶ 13

[6] Trust, Article XI

[7] Complaint, p. 3, ¶ 14

witnesses but was not acknowledged before a notary public.[8] The revocation document was

recorded on August 19, 2003 in the Essex South District Registry of Deeds.[9] That same day, Ms.

Porst, as trustee of the Trust, conveyed the Haverhill property to the debtor for a dollar.[10] On

February 25, 2004, Ms. Porst, as trustee of the Trust, conveyed the Haverhill property to the debtor

a second time for "[o]ne dollar ($1.00) and other good and valuable consideration."[11] With each

deed, Ms. Porst certified "that I am the current trustee of said trust and that said trust has not been

terminated or amended to date."[12]

Ms. Porst died in May 2005 and six years later, on June 29, 2011, Mr. Porst filed his

petition under chapter 13 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*) commencing the main

case in this court.[13]

American Home Mortgage Servicing, Inc., on behalf of Deutsche Bank, filed a secured

proof of claim in the chapter 13 case in the amount of $106,164.92 based on a note from the debtor

payable to Argent Mortgage Company LLC, secured by a first mortgage on the Haverhill

property.[14] According to the documents attached to the proof of claim, Mr. Porst entered into the

---

[8] Complaint, p. 4, ¶ 17

[9] Complaint, p. 4, ¶ 15

[10] Complaint, p. 4, ¶ 18; Exhibit D to the Complaint

[11] Complaint, p. 4, ¶ 18; Exhibit E to the Complaint

[12] Complaint, p. 4, ¶ 19; Exhibit D; Exhibit E

[13] Complaint, p. 4, ¶¶ 20-21

[14] Complaint, pp. 4-5, ¶ 22-25.   The copies of the note, mortgage and assignment are attached to
the proof of claim.   The proof of claim was subsequently amended to reflect an amount owed of
$107,039.92

loan transaction with Argent on April 10, 2006 and on January 15, 2009 CitiResidential Lending

Inc. ("Citi"), as attorney-in-fact for Argent, executed an assignment of the mortgage to Deutsche

Bank National Trust Company.[15]

## Procedural History

Mr. Porst's original complaint contained six counts but was later amended to drop count II

(avoidance of the mortgage pursuant to Bankruptcy Code § 544), count III (liability for avoided

transfer under § 550(a)(1)) and count IV (liability for avoided transfer under § 550(a)(2)). By the

hearing date on the defendants' motions to dismiss, the remaining counts of the complaint had

been reduced to three- count I (determination of secured status under § 506(d)), count V (claims

under MASS. GEN. LAWS ch. 93A and ch. 93, §49, which the debtor defines as the "Massachusetts

Debt Collection Act") and count VI (negligent infliction of emotional distress). The viability of

Mr. Porst's motion for summary judgment on count I will depend on the disposition of the

defendants' motions to dismiss. Although Mr. Porst has not objected to Deutsche Bank's proof of

claim in the main case, the outcome of this adversary proceeding will also determine the

characterization of the bank's proof of claim as secured or unsecured.

## Positions of the Parties

Mr. Porst asserts that his mother's revocation of the Trust was ineffective because the

revocation instrument was not acknowledged as required by the Trust and furthermore that the

transfers of the Haverhill property to him by his mother as trustee did not comply with certain

requirements of the Trust and were thus invalid. Therefore, Mr. Porst argues, he has only a life

estate in the Haverhill property. Alternatively, he maintains that if the revocation of the Trust was

---

[15] See Mortgage, Note, and Assignment

effective, the Trust no longer owned the Haverhill property when his mother, in her capacity as trustee, attempted to convey it to him so again he has only a life estate in the Haverhill property. Either way, Mr. Porst claims, the mortgage on the Haverhill property he purported to grant to Argent in 2006 is a nullity since at that time he had no legal right to grant a mortgage.

Mr. Porst also challenges the validity of the assignment of the note on the grounds it was not endorsed.   He also challenges the assignment of the mortgage to Deutsche Bank executed by Citi as Argent's authorized agent and further alleges that since approximately 2008 Deutsche Bank, by and through its agent, the law firm of Ablitt Scofield, P.C., has improperly demanded payment in full of the note balance under threat of foreclosure and attempted to foreclose the mortgage on the Haverhill property,[16] including causing Ablitt to publish information concerning Mr. Porst's debt under the note as well as noticing the scheduled foreclosure sale. Mr. Porst alleges that these actions caused him extreme emotional distress and led to his hospitalization for cardiac symptoms.[17] He alleges that these actions, coupled with the allegedly invalid assignment of the note and mortgage on the Haverhill property to Deutsche Bank, render Deutsche Bank, Ablitt and Citi liable to him under MASS. GEN. LAWS chapters 93A and 93, § 49 and for the negligent infliction of emotional distress. Mr. Porst does not appear to be seeking damages from Argent who appears to be implicated in count I of the complaint only.

Deutsche Bank, asserting that Mr. Porst did, in fact, own the Haverhill property when he entered into the loan transaction with Argent, seeks dismissal of the complaint. It maintains that Ms. Porst's revocation of the Trust was ineffective and thus the Trust still owned the Haverhill

---

[16] Complaint, p. 5, ¶ 30

[17] Complaint, pp. 5-6, ¶¶ 30-32

property when Ms. Porst, acting as trustee, conveyed it to the debtor and that the conveyance was proper and valid.[18] As for the validity of the assignment to it of the mortgage, Deutsche Bank cites numerous cases from both the district and bankruptcy courts in Massachusetts supporting its contention that the debtor lacks standing to attack the assignment. Because the debtor owned the Haverhill property when he granted the mortgage to Argent and because he may not attack the validity of the assignment of the mortgage, the bank maintains that the debtor has no valid cause of action for damages under MASS. GEN. LAWS chapters 93A and 93, § 49 or for negligent infliction of emotional distress as these causes of action rest upon actions the bank was legally entitled to undertake. Additionally, Deutsche Bank notes that the debtor failed to send it a demand letter which is a prerequisite to bringing an action under MASS. GEN. LAWS ch. 93A.

Building upon Deutsche Bank's analysis, Ablitt seeks dismissal asserting that the complaint lumps all the defendants together without articulating which causes of action the debtor asserts lie against each defendant. Ablitt notes that it cannot be liable for carrying out its duties as the attorney for the bank which was legally entitled to foreclosure on the Haverhill property. Finally, relying on *Stern v. Marshall*, ⸺ U.S. ⸺, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), Ablitt challenges this court's subject matter jurisdiction to hear and determine the claims asserted in the complaint and also argues that this adversary proceeding is outside even the court's "related-to" jurisdiction under 28 U.S.C. § 1334(b) and § 157(a).

Argent seeks dismissal of the complaint arguing that it is not the current mortgagee, did not file a proof or claim and did not commence any foreclosure proceedings against the debtor. Citi joins Argent's argument and further notes that it was never a mortgagee with respect to the

---

[18]  None of the parties raises the implications of the duplicate conveyance of the Haverhill property by Ms. Porst to Mr. Porst and thus it is not germane to the determination of the pending motions.

Haverhill property. Citing *In re Samuels*, 415 B.R. 8, 21 (Bankr. D. Mass. 2009) and *In re Almeida*, 417 B.R, 140 (Bankr. D. Mass. 2009), Citi also maintains that there is precedent in this district holding that Citi was empowered to execute mortgage assignments on behalf of Argent.

## Discussion

### Jurisdiction and Authority

Ablitt challenges this court's jurisdiction. As I have noted elsewhere, the Supreme Court's ruling in *Stern v. Marshall* is to be narrowly construed. *Acevedo v. Wells Fargo, N.A. (In re Acevedo)*, 2012 WL 3249502 (Bankr. D. Mass. Aug. 7, 2012) (citing *DiVittorio v. HSBC Bank, USA, NA (In re DiVittorio)*, 670 F.3d 273, 282 n.4. (1st Cir. 2012)). Here a determination of the nature and extent of Deutsche Bank's lien is integral to determining the validity of its proof of claim as well as its pending objection to confirmation of the debtor's chapter 13 plan filed in the main case. This places this adversary proceeding beyond the narrow scope of *Stern.* As the Supreme Court itself articulated:

> Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. We conclude today that Congress, *in one isolated respect,* exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim *that is not resolved in the process of ruling on a creditor's proof of claim.*

*Stern*, 31 S.Ct. at 2620 (emphasis added).   *See also DiVittorio v. HSBC Bank USA, NA (In re DiVittorio),* 670 F.3d 273, 282 (1st Cir.2012) (resolution of the MCCCDA claim necessary to determine whether the lender was entitled to relief from stay); *O'Connell v. Wells Fargo Bank, N.A. (In re O'Connell),* 2012 WL 2685149, at *1 (Bankr. D. Mass. July 6, 2012) (MCCCDA claim necessarily resolved in determination of extent and security of bank's claim); *FNB Bank v. Carlton (In re Carlton),* 2011 WL 3799885, at *1 & n. 5

7

(Bankr.N.D.Ala. Aug. 26, 2011) (court could enter final order on TILA claim because outcome of TILA claim would affect reconsideration of allowance of bank's claim). Therefore, *Stern* does not prohibit my entering a final order in this proceeding.

Furthermore, count I of the complaint (determination of secured status under § 506(d)) is a core matter for which I may enter final orders pursuant to 28 U.S.C. § 157(b)(2)(K). Counts V (MASS. GEN. LAWS chapters 93A and 93§ 49) and VI (negligent infliction of emotional distress) involve acts alleged in the complaint to have occurred "[s]ince approximately 2008," well before the filing of Mr. Porst's bankruptcy case. Thus, any monetary recovery by Mr. Porst would inure to the benefit of his bankruptcy estate and thus at the very least counts V and VI fall within the "related-to" jurisdiction of the bankruptcy court under 28 U.S.C. § 1334(b) and § 157(a). *In re G.S.F. Corp*., 938 F.2d 1467, 1475 (1st Cir. 1991) ( "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)).

The only ground upon which Ablitt has challenged the court's jurisdiction is that the proceeding is not within the core or related-to jurisdiction of the bankruptcy court. As I have determined that count I, upon which counts V and VI are premised, is within the core jurisdiction and that counts V and VI are, at the very least, within the court's related-to jurisdiction, Ablitt's challenge is without merit.

**Motion to Dismiss Standard**

8

The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. Civ. P. 12(b)(6), made applicable to this proceeding by Fed. R. Bankr. P. 7012. In deciding a motion to dismiss "a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). To avoid dismissal of a claim under Rule 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). It is not enough simply to allege the elements of a claim. The court, however, is "not bound to accept legal conclusions couched in fact." *In re DiVittorio*, 430 B.R. 26, 44 (Bankr. D. Mass. 2010).

When deciding a motion to dismiss a court is generally limited to considering "facts and documents that are part of or incorporated into the complaint." *Trans–Spec Truck Serv., Inc. v. Caterpillar Inc.,* 524 F.3d 315, 321 (1st Cir. 2008). "A court may also consider a limited universe of materials not included in or attached to the complaint, such as documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." *In re Bailey,* 437 B.R. 721, 727 (Bankr. D. Mass. 2010) (internal citations and quotation marks omitted).

## Count 1- Determination of Secured Status under § 506(d)

In count I, Mr. Porst seeks a determination that Deutsche Bank's claim is unsecured on the grounds that he did not own the property when he granted the mortgage to Argent in 2006. As previously noted, he offers two alternative arguments on this point. First, he asserts that the 2003

trust revocation instrument was ineffective and that Ms. Porst, as trustee of the Trust, had no power

to transfer the Haverhill property to him as she purported to do twice by deeds in 2003 and 2004.

Alternatively, Mr. Porst contends that if the 2003 trust revocation instrument was effective, then

the Trust no longer existed when Ms. Porst, acting solely in her capacity as trustee, purported to

deed the property to him in 2003 and 2004.

In evaluating the validity of the transfer, it is necessary first to determine the validity of the

trust revocation instrument.

### 1.   Was the Trust revocation effective?

Under Massachusetts law, it "is plain that a valid trust, once created, cannot be revoked or

altered except by the exercise of a reserved power to do so, which must be exercised in strict

conformity to its terms." *Phelps v. State St. Trust Co.*, 330 Mass. 511, 512, 115 N.E.2d 382, 383

(1953). In *Phelps*, the Massachusetts Supreme Judicial Court evaluated the efficacy of purported

amendments by the settlor, Ms. Phelps. The Phelps trust instrument provided "I reserve the right at

any time or times to amend or revoke this trust in whole or in part by an instrument in writing

acknowledged and delivered to the trustees." *Id*, 115 N.E.2d at 383. Ms. Phelps attempted to

amend the trust but the amendment made was not acknowledged by her before delivery to the

independent trustees. The SJC found the amendment to be invalid because the trust required

amendments to be acknowledged.

> We think that the requirement of acknowledgment meant that the settlor must
> acknowledge the instrument making the alteration before a public officer
> authorized by law to take acknowledgments of other writings. G.L.(Ter.Ed.) c. 4, §
> 6, Sixth; c. 183, §§ 29, 30; *McQuatt v. McQuatt*, 320 Mass. 410, 415, 69 N.E.2d
> 806. And we think that the requirement of acknowledgment was not wholly for the
> benefit of the trustees, and that it could not be waived by them.

*Id.* at 512-13, 115 N.E.2d at 383.

10

The trust language at issue in *Phelps* is nearly identical to the Trust's language here.[19]  The

SJC's holding in *Phelps* establishes the law on this point in Massachusetts and I am bound to

follow it.

In order to execute an effective revocation of the Trust, Ms. Porst was required by the Trust

terms to deliver to the trustee a written instrument signed <u>and</u> acknowledged by her. While she

signed the revocation, she failed to acknowledge it. Without an acknowledgment, the revocation

instrument was not exercised in strict conformity with the requirements of the Trust and was thus

ineffective to revoke the Trust.

### 2.   As the Trust revocation was ineffective, is the mortgage void?

In light of the determination that the Trust was not revoked by the 2003 instrument of

revocation, it is necessary to address Mr. Porst's three arguments that the transfers to him of the

Haverhill property by his mother as trustee were nevertheless ineffective and that as a result

Deutsche Bank's claim is an unsecured claim. First, he argues that the transfer of the Haverhill

property from Ms. Porst, as trustee, to him for inadequate consideration violated Ms. Porst's duties

as trustee; second, Ms. Porst as trustee was entitled to reasonable compensation for the exercise of

her powers under the Trust but did not receive such compensation; and third, the Haverhill

Property was the family home and the intent of the grantor in creating the Trust was to retain the

family home in the Trust and not to sell it. I take each argument in turn.

### (a) Did the trustee breach her fiduciary duty?

---

[19]  Article XI of the Trust provides: "The Grantor shall have the right to amend or revoke this
instrument at any time by delivering to the Trustee a written instrument signed and acknowledged
by the Grantor."

Mr. Porst argues that both deeds to the Haverhill property to him for inadequate consideration were void as violative of Ms. Porst's duties as trustee under the Trust. This is a strange argument since it is not being raised by Ms. Porst's creditors or by her contingent remaindermen but rather by the debtor who was the transferee of the transfer that he now argues should be set aside because he paid no consideration. Nevertheless, for the proposition that a transfer may be set aside when a trustee breaches her fiduciary duty to contingent beneficiaries, Mr. Porst rests entirely on the SJC's decision in *Clune v. Norton*, 306 Mass. 324, 28 N.E.2d 229 (1940), which he claims is on all fours with this case. He claims that in *Clune* the SJC found a conveyance by a trustee to be null and void because it was made without consideration and in violation of the trustee's duty to remaindermen. Although correctly stating the holding of *Clune*, the debtor's argument ignores certain basic distinguishing facts, primarily that *Clune* involved an irrevocable trust.

In *Clune*, two co-settlor parents conveyed real estate to their son as trustee under an *irrevocable* "deed of trust," which provided the settlors with a life estate in the real estate or the net rents and profits therefrom. "The trustee was given power to sell and convey the premises 'at public auction or by private contract,' or from time to time to mortgage the same, the proceeds of any such sale or mortgage to be held upon the same trusts, and to the same uses hereinbefore set forth." *Id.* at 230. Upon the death of both settlors the trustee would have absolute discretion to use the property in any manner he chose "for the use and benefit of all the present children" of the settlors. *Id.* When his mother died, the trustee, at his father's request, conveyed the real estate back to his father for no consideration by a deed that was never recorded. The father bequeathed the real

estate to only one daughter and, upon the father's death, litigation among the siblings over the rights to the property ensued.

The SJC, in construing the trust for purposes of determining the siblings' rights, concluded that the trust was irrevocable and conferred upon the trustee no right to give away the trust property, even to his father, one of the settlors of the trust. The Court concluded that the deed was void thus the father had nothing to devise under his will. *Id.* at 231.

The critical difference between *Clune* and this case is that here the Trust was *revocable* by Ms. Porst at any time. In *Brundage v. Bank of America*, the Fourth District Court of Appeal of Florida held that "during the settlor/beneficiary's lifetime, a trustee owes a fiduciary duty to the settlor/beneficiary and not the remainder beneficiaries, who not only have no vested interest but whose contingent interest may be divested by the settlor prior to her death." The court went on to observe, "[w]e have found no case which enforces on a trustee a duty owed to a contingent beneficiary of a revocable trust." 996 So.2d 877, 882 (Fl. Ct. App. 2008). In *Moon v. Lesikar*, the Court of Appeals for the 14th District of Texas considered "whether a contingent beneficiary can complain of a transaction by the settlor of a revocable trust, prior to the vesting of her interest upon the death of the settlor." 230 S.W.3d 800, 803 (Tex. 2007). The *Moon* court discussed three cases from other jurisdictions, *Hoelscher v. Sandage*, 462 N.W.2d 289 (Iowa Ct. App. 1990); *In re Malasky*, 290 A.D.2d 631 (N.Y. App. Div. 2002); *Siegel v. Novak*, 920 So.2d 89 (Fla. App. 2006), and concluded that "because Mr. Lesikar was the settlor of the trust with the power to revoke the trust, the sole beneficiary of the trust while alive, and co-trustee of the trust," the plaintiff, who was a contingent beneficiary of the trust, lacked standing to contest the disposition of certain trust assets while Mr. Lesikar was still alive.

13

The only Massachusetts case dealing with a trustee's fiduciary duty in the context of a revocable trust is *Marchant v. Dangelo*, 818 N.E.2d 1098, 2004 WL 2755425, in which the Massachusetts Appeals Court, in an unpublished decision, affirmed a lower court's judgment that the revocation of the trust was invalid as the trustees failed to comply with the trust's requirements for revocation and thus the deeds transferring title from that trust to four other trusts were void.[20] The Appeals Court noted that the lower court found that the trustees had breached their fiduciary duties to the beneficiaries. Although the Appeals Court recognized that there was a fiduciary duty owed to the beneficiaries, the Court's ruling appears to have been based in part on the lower court's finding that the trustees had breached their fiduciary duties to named beneficiaries under a revocable trust by conveying trust property and engaging in what the trial judge found to be "self-dealing" on the part of the trustees. The holding in *Marchant* appears to be limited to its facts, namely a trustee's self-dealing, and thus is readily distinguishable from the facts here. Also, *Marchant* appears to involve claims by actual as opposed to contingent beneficiaries or remaindermen.   Mr. Porst presses his claim that the trustee's transfer for no consideration is void based on his status at the time of the transfer as a contingent remainderman under the Trust.   It is the confluence of factors, Trust revocability and the contingent nature of the beneficiary's claim, that presents an insurmountable hurdle to Mr. Porst's attempt to attack the trustee's conveyance of the property.

Moreover, the Appeals Court in *Marchant* cited the SJC's decision in *Copp v. Worcester County Nat'l Bank*, 347 Mass. 548, 199 N.Ed.2d 200 (1964), as support for the existence of a trustee's fiduciary duty. In *Copp*, which apparently involved an irrevocable trust established by a

---

[20] The Appeals Court noted that the lower court found the deeds void because the purported revocation on the trust was not acknowledged as required by the trust.

husband testator to provide income for life to his wife with the pro rata share of the trust corpus to
be given to his children when each reached age thirty, the SJC stated that "[t]he power which is
given to the trustee is not unrestricted, for a court of equity may control a trustee in the exercise of
a fiduciary discretion if it acts beyond the bounds of a reasonable judgment or unreasonably
disregards usual fiduciary principles, or the purposes of the trust, or if it fails to observe standards
of judgment apparent from the applicable instrument." *Id.* at 551, 199 N.Ed.2d at 203. Unlike
*Copp*, here Ms. Porst had the power to revoke the Trust which would have left her free to do with
the Haverhill property whatever she chose.

"When ruling on an issue of state law, a bankruptcy court must rule as it believes the
highest court of the state would rule."   *Braunstein v. Grassa (In re Grassa)*, 363 B.R. 650, 655
(Bankr. D. Mass.2007). "When the highest court has not addressed the issue, the Bankruptcy Court
should not regard lower court rulings on the issue as dispositive. Rather, it should attempt to
predict what the highest court would do and to that end should accord proper regard to decisions of
other courts of the state." *Id.* (Internal citation omitted).

I predict that if the SJC were confronted with this case it would follow *Brundage* and *Moon*
in finding that during the lifetime of the settlor/beneficiary, the trustee of a revocable trust is under
no duty to consider the interests of the remainder beneficiaries "whose contingent interest may be
divested by the settlor prior to his [or her] death." *Brundage*, 996 So.2d 877, 882 (Fla. Dist. Ct.
App. 2008). To hold otherwise would eviscerate an underlying purpose of the revocable trust and
disrupt the expectations of the settlor. Additionally, I note the odd posture in which this argument
is raised by the debtor. The debtor is not attacking his mother's estate for giving away the property;
after all he was the intended recipient upon her death. Rather, he seeks to raise the lack of

15

consideration for the transfer to shield himself from an obligation he freely undertook when he

borrowed money and gave a mortgage in 2006. I find that under the circumstances presented here,

the absence of consideration for the trustee's conveyance of the Haverhill property to the debtor

does not provide any basis for invalidating that conveyance.

**(b)  Was the transfer void because reasonable compensation was not given?**

The debtor's second basis for treating the mortgage as void is that the trustee did not

receive "reasonable compensation" when she transferred the Haverhill property to him. Mr. Porst

relies on the introductory paragraph of Article VII of the Trust for this argument, which provides,

in part, "The Trustee shall be entitled to reasonable compensation to be paid from the trust

property." The debtor attempts to connect the "reasonable compensation" provision in the

introductory paragraph of Article VII with the trustee's power to sell set forth in the separate

subparagraph A of Article VII. No reasonable reading of Article VII can support the debtor's

tortured argument. The trustee's right to receive "reasonable compensation" is entirely unrelated

to the trustee's power to sell "for such consideration and upon such terms, including credit, as she

deems advisable." This argument, therefore, has no merit and is rejected.

**(c)  Was the transfer void because it involved the sale of the family home?**

The debtor's third argument is that the transfer is void because the trustee was not

permitted to sell the family home unless so requested by the debtor, Mr. Porst. The debtor alleges

that the Trust language "shows that the intent was to preserve the family home for the [debtor's]

use during his lifetime and after [Ms. Porst's] death." *Opp. to Deutsche Motion to Dismiss* p. 11.

The debtor cites *Royd-Sykes v. Dicken*, 142 P.3d 338 (Kan. App. 2006) (unpublished) as support

for his position.

16

In *Royd-Sykes*, the beneficiary of a trust brought suit against the trustee-co-beneficiary on the basis that the trustee breached her fiduciary duty to the complaining beneficiary by selling trust property in which the trustee had only a life estate. The trial court entered summary judgment in favor of the trustee, but the court of appeals reversed. The trust instrument in *Royd-Sykes* contained the following expression of intent by the settlor: "It is my intention that the real estate conveyed pursuant to this residuary article remain in my family" and expressly directed the property at issue to "pass to my heirs at law." 142 P.3d 338, at *4 (2006). The *Royd-Sykes* court thus found that the settlor intended that the real estate at issue remain in the family and in the trust and therefore the trustee violated her fiduciary duty to the vested remainder beneficiaries.

What distinguishes the trust in *Royd-Sykes* from the Trust here is that nothing in the Trust manifests an intent by Ms. Porst to require the retention of the Haverhill property in the Trust corpus. The Trust provision upon which Mr. Porst relies states: "Upon the death of the Grantor, **if** the Grantor's son, ALBERT JOHNSON PORST, JR., is then living, **and** the family home is still an asset of this trust, the Trustee shall continue to hold and administer the trust principal and income for the benefit of the debtor's son." *Article II* (emphasis added). Mr. Porst's rights to the family home were entirely contingent upon whether the family home remained an asset of the Trust upon the death of Ms. Porst; the negative implication being that it very well might not. Furthermore, Article VII.A.1 of the Trust gives the trustee the broad power to "sell and to grant options to purchase all or any part of the trust property, real and personal, at public or private sale, for such consideration and upon such terms, including credit, as she deems advisable." As Ms. Porst was entitled to sell any part of the Trust property, the argument that the family home was not to be sold absent consent from Mr. Porst is groundless.

17

Similar to his breach of fiduciary duty argument discussed above, Mr. Porst's attempt to avoid his mother's transfer of the Haverhill property to him because the Trust required it be retained for *his* benefit is another example of his audacious circular reasoning.

Each of Mr. Porst's arguments as to the invalidity of Ms. Porst's conveyance to him of the Haverhill property lacks legal merit and thus does not support his claim that the mortgage on the property is void. Therefore, the defendants' motions to dismiss will be granted as to count I of the complaint and Mr. Porst's motion for summary judgment on count I will be denied.

## Count V- MASS. GEN. LAWS Chapter 93A and Chapter 93, § 49

In count V of the complaint Mr. Porst seeks damages against Deutsche Bank, Citi and Ablitt under MASS. GEN. LAWS ch. 93A and ch 93, § 49.[21]  Both of these claims are premised on the debtor's assertions that the mortgage is void and the assignment of the note and mortgage to Deutsche was invalid.

### MASS. GEN. LAWS Chapter 93A Claim

Mr. Porst alleges several "facts" that he says demonstrate how Deutsche Bank, Citi and Ablitt engaged in unfair and deceptive acts and practices.   Each fact, however, is little more than a conclusory allegation based on Mr. Porst's argument that the mortgage is invalid.   His reasoning for why the mortgage is invalid is not spelled out in this count but rests upon his allegation that his "inability to mortgage the Property has at all times been readily ascertainable from the documents recorded at the Southern Essex Registry of Deeds, including but not limited to: the Trust, the Revocation, the 2003 Deed and the 2004 Deed." Additionally, he asserts that Deutsche lacks standing to foreclose because the note was not properly endorsed although he does not identify the

---

[21] Count V does not contain any causes of action aimed at Argent.

endorsement deficiencies. He challenges the validity of the assignment of the mortgage claiming

that by January 15, 2009, the date of the mortgage assignment, Argent no longer existed, and even

if it did Citi was not authorized to execute the assignment (an assertion disputed by Argent in its

memorandum in support of its motion to dismiss), and further, the person who executed the

assignment was neither an employee nor authorized agent of Citi. Because, according to Mr. Porst,

Deutsche, Citi and Ablitt knew about these infirmities when they embarked on the foreclosure

process, each committed unfair and deceptive acts under MASS. GEN. LAWS ch. 93A.

Mr. Porst's challenge to the validity of the mortgage assignment fails for several reasons.

First, it is well settled that "[e]ven if a signatory [of a mortgage assignment] lacks authority, an

assignment may still be binding under Massachusetts law if the signatory purported to be an officer

of the entity holding title to the mortgage and the assignment was executed before a notary public."

*Rosa v. Mortgage Electronic Systems, Inc*. 821 F. Supp.2d 423, 430 (D. Mass. 2011) (citing MASS.

GEN. LAWS   ch. 183§, 54B and *Kiah v. Aurora Loan Services, LLC*, 2011 WL 841282, at *7 (D.

Mass. March 4, 2011). *See also Nickless v. Marron (In re Marron)*, 2012 WL 4482374, at *4 (D.

Mass. Sept. 26, 2012); *Aliberti v. GMAC Mortg., LLC*, 779 F. Supp.2d 242, 249 (D. Mass. 2011) )

("an assignment executed before a notary public by a person purporting to hold the position of vice

president of the entity holding such mortgage shall be binding upon such entity"); *In re Carlson*,

2011 WL 3420436, at *6 (Bankr. D. Mass. Aug. 6, 2011); *In re Marron*, 455 B.R. 1, 7-8 (Bankr. D.

Mass. 2011).

Second, even if the mortgage assignment was invalid, the invalidity of the assignment does

not void the mortgage itself. It simply results in the mortgage remaining in the hands of the

assignor. *Nickless v. Bayview Loan Servicing, LLC (In re Richard)*, 460 B.R. 355, 358 (Bankr. D.

Mass. 2011). Consequently, Mr. Porst is an unrelated party to the assignment and thus lacks

standing to challenge the validity of the assignment of the mortgage. *Wenzel v. Sand Canyon*

*Corp.*, 841 F. Supp.2d 463, 478 (D. Mass. 2012).

      His challenge to the assignment of the note is not articulated with any specificity although

his complaint appears to be that Deutsche Bank did not hold both the note and mortgage when it

began its foreclosure proceedings.   As previously noted, the complaint alleges that these actions

were begun in approximately 2008, well before the SJC's decision in *Eaton v. Federal Nat'l*

*Mortg. Ass'n*, 462 Mass. 569, 969 N.Ed.2d 1118 (2012).   In *Eaton* the Court held that, in addition

to holding the mortgage, a mortgagee must also either hold the underlying note or be acting on

behalf of the noteholder in order to foreclose on its collateral. But the holding in *Eaton* was

prospective only. The complaint fails to allege that any of the actions undertaken by the defendants

occurred after June 22, 2012, the date of the *Eaton* decision.

      An additional ground, at least as to Deutsche, for the failure of this claim is the failure of

Mr. Porst to send Deutsche a demand letter pursuant to MASS. GEN. LAWS ch. 93A, § 2 which is

fatal to Mr. Porst's claim against Deutsche. *Mitchell v. Wells Fargo Bank, N.A. (In re Mitchell),*

2012 WL 2974781, at *9 (Bankr. D. Mass. July 20, 2012).

      Therefore, the complaint fails to state a claim under MASS. GEN. LAWS ch. 93A.

### MASS. GEN. LAWS Chapter 93 § 49

      Mr. Porst claims Deutsche, Citi and Ablitt violated MASS. GEN. LAWS ch. 93, § 49, which

prohibits the use of "unfair, deceptive or unreasonable" methods by creditors and their attorneys in

collecting or attempting to collect a debt from an individual residing in Massachusetts.[22] 940

---

[22] The relevant portion of § 49 provides:

CMR 7.00 and following, issued pursuant to Chapter 93A, § 2(c), provide guidance on what constitutes an unfair or deceptive act or practice by establishing standards for the collection of debts in Massachusetts. *Id.* at § 7.01. Section 7.07 of the regulations provides a list of practices that are considered unfair or deceptive in collecting a debt including making "[a]ny knowingly false or misleading representation in any communication as to the character, extent to amount of the debt…." by, among other things, filing a proof of claim or threatening foreclosure.

Because Mr. Porst asserts that the mortgage on the Haverhill property is invalid, he concludes that the defendants had no right to assert a security interest in the property, let alone threaten foreclosure, and thus their actions constituted a violation of MASS. GEN. LAWS ch. 93, § 49 which in turn is a per se violation of MASS. GEN. LAWS ch. 93A. But as I have determined that

---

No one who is a creditor or an attorney for a creditor, or an assignee of a creditor, of a natural person present or residing in Massachusetts who has incurred a debt primarily for personal, family or household purposes shall collect or attempt to collect such debt in an unfair, deceptive or unreasonable manner.
For the purposes of this section, such collection or attempt to collect shall be deemed unfair, deceptive or unreasonable if:

(a) The creditor communicates, threatens to communicate, or implies the fact of such debt or alleged debt to a person other than the person who might reasonably be expected to be liable therefor, or to an authorized user after the fact if that status is communicated to the creditor in writing, except with the written permission of the alleged debtor. The provisions of this paragraph shall not prohibit a creditor from notifying a debtor of the fact that the creditor may report a debt or alleged debt to a credit bureau or engage an agent or an attorney for the purpose of collecting the debt or alleged debt. For the purposes of this paragraph, the use of language on envelopes indicating that the communication relates to the collection of a debt shall be deemed a communication of such debt or alleged debt.
. . .

Failure to comply with the provisions of this section shall constitute an unfair or deceptive act or practice under the provisions of chapter ninety-three A.

the mortgage was valid, Mr. Porst's claim under MASS. GEN. LAWS ch. 93,§ 49 is no more viable

than his failed claim under MASS. GEN. LAWS ch. 93A upon which it rests.

Deutsche Bank was entitled to pursue a foreclosure action against the Haverhill property so

long as Mr. Porst was in fact in default under the note and provided that Deutsche proceeded

according to the loan documents and all relevant statutes and regulations. Mr. Porst has failed to

present any facts which might suggest that Deutsche proceeded in a manner which was unfair or

deceptive under MASS. GEN. LAWS Chapter 93, § 49 and 940 CMR 7.00. Consequently, the

defendants' motions to dismiss will be granted as to count V of the complaint.

## Count VI- Negligent Infliction of Emotional Distress

In count VI of the complaint, Mr. Porst claims that the conduct of Deutsche, Citi and Ablitt

in pursuing foreclosure was negligent,[23] and that this negligence caused him emotional distress

which was manifested by "objective symptomatology." In response, the defendants state that in

light of the valid mortgage and assignment, Mr. Porst has not stated a claim for negligence, never

mind negligent infliction of emotional distress

> To recover for the tort of negligent infliction of emotional distress, a plaintiff must prove:
> "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by
> objective symptomatology; and (5) that a reasonable person would have suffered
> emotional distress under the circumstances of the case." *Payton v. Abbott Labs,* 386 Mass.
> 540, 557, 437 N.E.2d 171 (1982). It is fundamental that there must be a showing of a duty
> of care owed to the plaintiff, because "[t]here can be no negligence where there is no duty."
> *McHerron v. Jiminy Peak, Inc.,* 422 Mass. 678, 681, 665 N.E.2d 26 (1996), quoting from
> *Aetna Cas. & Sur. Co.* v. *Fennessey,* 37 Mass.App.Ct. 668, 673, 642 N.E.2d 1050 (1994).
> "Whether a defendant has a duty of care to the plaintiff in the circumstances is a question of
> law for the court, to be determined by reference to existing social values and customs and
> appropriate social policy." *O'Sullivan v. Shaw,* 431 Mass. 201, 203, 726 N.E.2d 951
> (2000), and cases cited.

---

[23] As with count V, count VI is devoid of any reference to Argent.

*Conley v. Romeri*, 60 Mass. App. Ct. 799, 801, 806 N.E.2d 933, 936 (2004).

In the context of foreclosure, the duty of a mortgagee to a mortgagor, the breach of which could give rise to a negligence claim, is that the mortgagee "must act in good faith and must use reasonable diligence to protect the interests of the mortgagor." *Williams v. Resolution GGF OY*, 417 Mass. 377, 382-83, 630 N.E.2d 581, 584 (1994). This is the scope of the duty owed by the defendants to Mr. Porst.

Mr. Porst's allegation of a lack of good faith on the part of the defendants is based on his assertion that the mortgage and assignment to Deutsche were fatally defective.   Having ruled against Mr. Porst as a matter of law on this point, there is no basis upon which a claim of negligence can survive a motion to dismiss. Mr. Porst is thus unable to recover on a claim for negligent infliction of emotional distress and count VI of the complaint will be dismissed.

## Conclusion

The defendants' motions to dismiss are granted and Mr. Porst's motion for summary judgment is denied. Separate orders will enter instructing the clerk to enter judgment for the defendants.

At Worcester, Massachusetts this 4th day of October, 2012.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

23

Counsel Appearing:   Sara Discepolo
                     Framingham, MA
                     for Albert J. Porst, Jr.

                     Maura K. McKelvey
                     Hinshaw & Culbert LLP
                     Boston, MA
                     for Deutsche Bank National Trust Company

                     Gregory N. Blasé
                     K&L Gates LLP
                     Boston, MA
                     for CitiResidential Lending Inc.
                     and Argent Mortgage Company LLC

                     Todd B. Gordon
                     The Gordon Law Firm
                     Boston, MA
                     for Ablitt Schofield., P.C.